1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ALLIANCE EQUIPMENT LEASE PROGRAM SECURITIES LITIGATION | ) ) ) |
| | ) |
| This Document Relates To: | ) ) |
| | ) |
| All Actions | ) ) |
| | ) ) |
| | ) |

Civil No. 98cv2150 J (NLS)

**SECOND SUPPLEMENTAL ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST ADDITIONAL MEMBERS OF THE DEFENDANT CLASS [Doc. No. 1218]**

Before the Court is Plaintiff's Second Supplemental Motion for Summary Judgment Against Additional Members of the Defendant Class. [Doc. No. 1218]. On July 1, 2004, this Court granted Lead Plaintiffs' Motion for Summary Judgment and awarded damages based on Plaintiff Class members' supplemental declarations. [Doc. No. 1038.] However, during the pendency of the Motion for Summary Judgment, Plaintiffs advised the Court that six members of the Defendant Class had not been served notice. [Doc. No. 973]. This Court excluded these brokers from the Order, and Magistrate Judge Stormes subsequently granted leave to serve these members of the Defendant class. [Doc. No. 1117.] To date, no oppositions have been filed. Lead Plaintiffs have indicated that this will be the final motion for summary judgment. The Court has determined that the issues presented herein are appropriate for decision without oral argument. *See* S.D. Cal. Civ. R. 7.1(d)(1). For the reasons discussed herein, the Court **GRANTS** Plaintiff's Motion for Summary Judgment against these additional members of the Defendant class.

98cv2150

***Background***

The facts of this case are recited in the Court's February 5, 2003, Order granting Plaintiff's Motion for Partial Summary Adjudication. (*See* Order Granting Pls.' Mot. for Partial Summ. J. at 1-3.)  In short, this case arises out of the sale of Alliance Equipment Lease Program contracts to Plaintiff Class members between the dates of November 1, 1997, and November 25, 1998.  (*See* July 1, 2004, Order Granting Pls.' Mot. for Summ J. at 1.)  According to Plaintiffs, the leases did not exist, and the invested money was allegedly misappropriated by Alliance principals and their cohorts.  (*See id.*)  The present case is a nationwide class action brought by investors against various persons and entities involved in selling and marketing the Alliance Lease Program allegedly in violation of Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l.

On February 5, 2003, this Court held that collateral estoppel prohibited Defendants from relitigating whether the investment constituted a "security" under federal law.  (*See* Order Granting Pls.' Mot. for Partial Summ. J. at 6.)  On July 1, 2004, this Court granted Lead Plaintiffs' Motion for Summary Judgment and awarded damages based on Plaintiff Class members' supplemental declarations.  (*See* July 1, 2004, Order Granting Pls.' Mot. for Summ. J. at 1.)  However, on August 4, 2004, Lead Plaintiff's filed an *ex parte* Application for Leave to File Additional Supplemental Declarations and Briefing on behalf of eight Plaintiff Class members who, due to late notice, had not timely submitted proof of their damages.  [Doc. No. 961.]  This Court issued a supplemental order granting summary judgment and awarding damages to the additional class members.  (*See* Sept. 23, 2004, Supplemental Order Granting Pls.' Mot. for Summ. J. at 2.)

However, during the pendency of the Motion for Summary Judgment, Plaintiffs withdrew the Motion with respect to six members of the Defendant Class who were never served with notice of the establishment of a Defendant Class.  In the July 1, 2001, Order, this Court indicated that these unserved Defendants were still parties to this case, but were no longer involved in the Motion.  (*See* July 1, 2004, Order Granting Pls.' Mot. for Summ. J. at 3.)  On January 19, 2005, Magistrate Judge Stormes granted Lead Plaintiffs leave to serve the unserved Defendant Class

1   members with supplemental notice of Defendant Class certification.  (*See* Order Granting Ex

2   Parte Application for Leave to Serve Supplemental Notice at 6.)

3        Plaintiffs, thereafter, sent the supplemental notice to the unserved Defendant Class,

4   identified as Edward Beauette, Robert Clark, Frank DeMaria, Greg Gregson, Ronald La Porta,

5   Marcia Ratajczak, Steve Telesca, and Andrew P. Weis.  (*See* Aug. 28, 2006, Decl. of Vincent

6   Slavens ¶ 9.)  Subsequently, Plaintiffs reached settlement agreements with Defendants Steve

7   Telesca and Robert Clark.  (*See id.*)  Counsel for Lead Plaintiffs sent requests to Plaintiff Class

8   members who were sold Alliance Leasing contracts in order to obtain additional claim forms.

9   (*See id*.)  Counsel for Lead Plaintiffs received declarations from investors who claim to have

10  purchased their contracts from Frank Demaria, Greg Gregson, and Andrew P. Weis.  (*See id.*)

11

12                                   ***Legal Standard***

13       Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure

14  on "all or any part" of a claim where there is an absence of a genuine issue of material fact and

15  the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *see also Celotex*

16  *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

17  dispose of factually unsupported claims or defenses.  *See Celetox*, 477 U.S. at 323-24.  A fact is

18  material when, under the governing substantive law, the fact might affect the outcome of the

19  case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Freeman v.*

20  *Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a material fact is genuine if  "the

21  evidence is such that a reasonable jury could return a verdict for the nonmoving party."

22  *Anderson*, 477 U.S. at 248.  When making its determination, the Court must view all inferences

23  drawn from the underlying facts in the light most favorable to the party opposing the motion.

24  *See Matsushita Elec. Indus. Co. Ltd.  v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

25       The party seeking summary judgment bears the initial burden of establishing the absence

26  of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  The moving party can satisfy

27  this burden in two ways: (1) by presenting evidence to negate an essential element of the

28  nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a

1   showing sufficient to establish an element of his or her claim on which that party will bear the

2   burden of proof at trial.  *See id.* at 322-23.  If the moving party fails to discharge this initial

3   burden, summary judgment must be denied and the court need not consider the nonmoving

4   party's evidence.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

5       If the moving party meets the initial burden, the burden shifts to the nonmoving party to

6   "set forth specific facts showing there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.

7   "The mere existence of a scintilla of evidence in support of the nonmoving party's position is not

8   sufficient."  *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citing

9   *Anderson*, 477 U.S. at 252); *see also Matsushita*, 475 U.S. at 586 (if the moving party meets this

10  initial burden, the nonmoving party cannot defeat summary judgment by merely demonstrating

11  "that there is some metaphysical doubt as to the material facts").  It is insufficient for the party

12  opposing summary judgment to "rest upon the mere allegations or denials of [his or her]

13  pleading."  Fed. R. Civ. P. 56(e).  Rather, the party opposing summary judgment must "by [his

14  or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

15  designate 'specific facts showing that there is a genuine issue for trial.' "  *Celotex*, 477 U.S. at

16  324 (quoting Fed. R. Civ. P 56(e)).  "Disputes over irrelevant or unnecessary facts will not

17  preclude a grant of summary judgment."  *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors

18  Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In addition, the Court is not obligated "to scour the

19  records in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th

20  Cir. 1996) (citing *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).  "[T]he

21  district court may limit its review to the documents submitted for purposes of summary judgment

22  and those parts of the record specifically referenced therein."  *Carmen v. San Francisco Unified

23  Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

24      "Where the record taken as a whole could not lead a rational trier of fact to find for the

25  nonmoving party, there is no 'genuine issue for trial.' "  *Matsushita*, 475 U.S. at 587 (citing *First

26  Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).  Moreover, "[a] district

27  court must enter summary judgment against a party who fails to make a showing sufficient to

28  establish an essential element of a claim, even if genuine factual disputes exist regarding other

elements of the claim." *Cunningham v. City of Wenatchee*, 214 F. Supp. 2d 1103, 1110 (E.D. Wash. 2002) (citing *Celotex*, 477 U.S. at 323-24.)

### Discussion

Plaintiffs claim that summary judgment is appropriate here because there is no genuine issue of material fact relating to Section 12(a)(1).  (*See* Pls.' Mem. of P. & A. at 5.)  Section 12 creates liability for the sale of unregistered securities.  Section 12(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77l (1997), states that

> Any person who offers or sells a security in violation of section 77e of this title . . . shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77l(a)(1) (1997).  Section 77e, codifying Section 5 of the Securities Act of 1933, states that

> It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security . . . .

15 U.S.C. § 77e(c) (2007).

> It is well established that

> When a broker acting as agent of one of the principals to the transaction successfully solicits a purchase, he is a person from whom the buyer purchases within the meaning of  § 12 and is therefore liable as a statutory seller . . . .  The language and purpose of § 12(1) suggest that liability extends only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner.  If he had such a motivation, it is fair to say that the buyer 'purchased' the security from him and to align him with the owner in a rescission action.

*Pinter v. Dahl*, 486 U.S. 622, 646, 647 (1988).  Such a seller is strictly liable for the unlawful sale.  *See In re Towers Financial Corp. Noteholders Litigation*, 1995 WL 571888, at *4 (S.D.N.Y. 1995); *Riedel v. Acutote of Colorado,* 773 F. Supp. 1055, 1067 (S.D. Ohio 1991).

In order to establish a violation of Section 5, Plaintiffs must prove: (1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication or the mails in connection with the offer or sale. *Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 124 n.4 (2d Cir. 1998). Once a Section 5 violation has been established, sellers of the security may be held liable if they qualify as a "seller" under the standard established by the Supreme Court in *Pinter*, quoted above.

Here, the Court found, in a previous order, that the Lease Program investments at issue are securities for the purposes of federal securities law. (*See* Order Granting Pls.' Mot. for Partial Summ. J. at 6.) Also, Plaintiffs' claim that the securities were not registered is undisputed. The evidence that Plaintiffs have submitted to prove that the securities were unregistered is the declaration of Kathleen K. Bisaccia, an attorney with the Securities and Exchange Commission's Pacific Regional Office. (*See* Aug. 28, 2006, Pls.' Stmt. of Uncontested Facts, Ex. A.) As part of her investigation of the case against Alliance and the other defendants in the SEC action, she

> searched the [SEC's] computerized database which contains information about all securities, individuals, and entities registered with the Commission in any capacity. The database contained no registration statement for any securities of Alliance Leasing Corporation. The database further contained no registration for Prime Atlantic, Inc., as a broker-dealer or in any other capacity.

(*See id.* ¶ 12.)

Additionally, Plaintiffs claim that the Selling Brokers directly offered and sold the Alliance Leasing securities to Plaintiff Class members through the use of the mails or facilities of interstate commerce. (*See* Pls.' Mem. of P. & A. at 6.) To support this assertion, Plaintiffs have submitted declarations, made under penalty of perjury, from members of the participating Plaintiff Class stating that members of the unserved Defendant Class sold them the Alliance securities through the use of the mails or facilities of interstate commerce. (*See* Plaintiffs' Exs. 10-18, submitted Aug. 28, 2006.) Additionally, the specific amount of each broker's sale to the individual Plaintiff Class members is provided in each declaration. (*See id.*) Plaintiffs have, thus, submitted undisputed evidence establishing that the identified unserved Defendant Class

1   members sold Plaintiff Class members securities through the use of the mails or facilities of

2   interstate commerce.   (*See* July 1, 2004, Order Granting Pls.' Mot. for Summ. J. at 1.)

3   Accordingly, Plaintiffs have shown that the sales of the Alliance Leasing Program made by the

4   previously unserved Defendant Class members against whom this motion is brought violated

5   Section 5.

6          Defendant brokers will be liable for transactions that violated Section 5 if they qualify as

7   "sellers" under Section 12.  To establish that these Defendants were statutory sellers of Alliance

8   securities, Plaintiffs have submitted the declarations discussed above.  The Supreme Court has

9   established that

10              When a broker acting as agent of one of the principals to the transaction successfully
                solicits a purchase, he is a person from whom the buyer purchases within the meaning
11              of  § 12 and is therefore liable as a statutory seller . . . .

12  *Pinter v. Dahl*, 486 U.S. 622, 646, 647 (1988).  The undisputed evidence presented by Plaintiffs

13  establishes that Defendant brokers solicited the sales of the securities on behalf of Alliance.

14  Given that the brokers solicited investors on behalf of Alliance, Plaintiffs have established that,

15  as a matter of law, Defendants may be held liable for these sales pursuant to Section 12(a)(1) of

16  the Securities Act of 1933.  For transactions that violated Section 5, Plaintiffs are entitled to

17  summary judgment because they have established that there is no genuine issue of material fact

18  regarding Defendants' liability under Section 12 and that they are entitled to judgment as a

19  matter of law.

20         A party who establishes liability pursuant to Section 12(a)(1) is entitled "to recover the

21  consideration paid for such security with interest thereon, less the amount of any income

22  received thereon, upon the tender of such security, or for damages if he no longer owns the

23  security." 15 U.S.C. § 77l(a).  Currently before the Court are declarations from each

24  participating Plaintiff Class member that (1) state the amount of interest and applicable offsets, if

25  any, received by the member from the Alliance security, and (2) address the tender requirement,

26  indicating if the security is being tendered, was tendered in the past, or was lost or sold.  (*See*

27  Plaintiffs' Exs. 10-18, submitted Aug. 28, 2006.)  The Court **FINDS** that the evidence before it

28  is sufficient to authorize damages in favor of the participating Plaintiff Class members.

1   Plaintiffs have accounted for their securities, either tendering them now or indicating when they

2   were tendered in the past.  Some class members have lost the security, however, the Court finds

3   sworn declarations to this effect sufficient to satisfy the tender requirement.  The securities have

4   no value, hence, the fraud that the tender requirement is aimed at preventing is not possible in

5   this case.

6

7                                        *Conclusion*

8        Plaintiffs have presented evidence that establishes Defendants' liability under Section 12

9   of the Securities Act of 1933 for the sale of unregistered securities.  In addition, they have

10  provided sufficient evidence of their losses and have accounted for the securities, which are

11  additional requirements necessary for recovery under Section 12.  There are no remaining

12  material factual disputes, and Plaintiffs are entitled to judgment as a matter of law.  Plaintiffs'

13  Motion for Summary Judgment is **GRANTED**.  Furthermore, the Court has sufficient evidence

14  before it to award damages at this time.  In accordance with the formula previously employed,[1]

15  Lead Plaintiffs have calculated each participating Plaintiff Class member's net remaining

16  damages and pre-judgment interest thereon.  (*See* Aug. 28, 2006, Decl. of Vincent Slavens at 3-

17  4; *see also* Aug. 28, 2006, Proposed Order, Ex. A.)  The chart attached as a Supplemental

18  Appendix to this Order is an accurate statement of the amount invested set forth in **Column 3**, as

19  well as the net remaining damages set forth in **Column 4**, plus interest thereon, stated in

20  **Column 5**, to which participating Plaintiff Class members are entitled to recover from each

21  Defendant Class member.

22        **IT IS HEREBY ADJUDGED, ORDERED, and DECREED** that judgment shall be

23  entered against each Defendant Class member listed in **Column 1** and in favor of the

24  corresponding Investor/Plaintiff Class member in **Column 2** to whom each Defendant Class

25  member sold an interest in the Alliance Lease Program, for the total net remaining damages, set

26

27        [1] Net remaining damages equal the total amount invested minus the amount received in interest
from the Alliance investment, the amount received from the bankruptcy trustee and prior class action
28  settlements, and the pro rata share of attorney's fees.  Pre-judgment interest is calculated at the rate of
3.49% per year.  (*See* Aug. 28, 2006, Decl. of Vincent Slavens ¶ 12; *see also* Ex. 9.)

98cv2150

forth in **Column 4**, plus interest thereon, stated in **Column 5** of the Supplemental Appendix, for

violation of Section 12(a)(1) of the Securities Act of 1933.

**IT IS SO ORDERED.**


DATED:  February 23, 2007


_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc:  Magistrate Judge Nita L. Stormes
       All Counsel of Record

98cv2150

## SUPPLEMENTAL APPENDIX

### In Re Alliance Equipment Lease Program Securities Litigation

| Column 1 | Column 2 | Column 3 | Column 4 | Column 5 |
|---|---|---|---|---|
| Defendant Class Member | Investors | Amount Invested | Net Remaining Damages | Interest |
| Andrew P. Weis | Marcus A. Monaghan | $14,000.00 | $3,488.00 | $942.00 |
| Andrew P. Weis | Elizabeth A. Walbring | $75,000.00 | $18,136.00 | $4,897.00 |
| Andrew P. Weis | Matthew DeMarco | $10,000.00 | $2,492.00 | $673.00 |
| Andrew P. Weis | Jeffrey L. Pederson | $10,000.00 | $2,492.00 | $673.00 |
| Andrew P. Weis | E. Rowena Horton | $29,000.00 | $7,226.00 | $1,951.00 |
| Andrew P. Weis | Henry F. Peck | $10,000.00 | $2,492.00 | $673.00 |
| Andrew P. Weis | Betty Gonzales | $17,500.00 | $14,024.00 | $3,786.00 |
| Frank DeMaria | Mildred Lebron | $10,000.00 | $3,700 | $999.00 |
| Greg Gregson | Joyce Gardiner | $20,333.00 | $5,067.00 | $1,368.00 |
| **Total** | | **$195,833.00** | **$59,117.00** | **$15,962.00** |

98cv2150